## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**KIMBERLY LEE AELING,**

      **Plaintiff,**

                                   **Case No. 3:18-cv-824**

    **v.**                                **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Kimberly Lee Aeling for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on January 24, 2014, alleging that she has been disabled since January 12, 2013. R. 73, 81−82, 92, 154−58. On

---

[1] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

October 15, 2014, Plaintiff also filed an application for supplemental security income, alleging that she has been disabled since April 1, 2012. R. 121, 127, 159–67. Plaintiff's applications were denied initially and upon reconsideration. R. 73–80, 82–91, 95–99, 100–02. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 105–06. Administrative Law Judge Marguerite Toland ("ALJ") held a hearing on October 18, 2016, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 36–71. In a decision dated April 5, 2017, the ALJ concluded that Plaintiff was not disabled from January 12, 2013, through the date of the decision. R. 20–35. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 30, 2017. R. 1–5. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 18, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[2] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 25. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.        Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 41 years old on her alleged disability onset date of January 12, 2013. R. 30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 22.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, degenerative disc disease of the cervical spine, asthma, thyroid nodules, hypertension, and obesity. R. 23.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 23–24.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 24–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a receiving clerk, administrative clerk, and eye care receptionist. R. 29.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 64,935 jobs as an order clerk; approximately 47,549 jobs as a document preparer;

approximately 36, 172 jobs as a charge account clerk—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 30–31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act through the date of the decision. R. 31.

Plaintiff disagrees with the ALJ's findings and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 22; *Plaintiff's Reply*, ECF No. 24. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 23.

## IV.   DISCUSSION

### A.   Obesity

Plaintiff argues that the ALJ erred by failing to meaningfully evaluate Plaintiff's obesity at step three in accordance with SSR 02-1p. *Plaintiff's Memorandum of Law*, ECF No. 22, p. 14; *Plaintiff's Reply*, ECF No. 24, p. 1. Although obesity was removed as a "listed impairment" in 1999, the Court of Appeals for the Third Circuit has recognized that this removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00-3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "To the contrary, the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Id.* "Although SSR 00-3p was superseded by SSR

02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR

00-3p." *Id*. (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000)

("[O]besity may increase the severity of coexisting or related impairments to the extent that the

combination of impairments meets the requirements of a Listing. This is especially true of

musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other

coexisting or related impairments, including mental disorders.").

SSR 02-1p provides in relevant part as follows:

[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

. . . .

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function. . . .

We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .

> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings. [Footnote omitted.]

> However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, 67 Fed. Reg. 57859-02. Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016) (quoting *Jones,* 364 F.3d at 505). However, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504.

Here, the ALJ identified obesity as one of Plaintiff's severe impairments at step two of the sequential evaluation. R. 23. At step three, the ALJ noted that no physician had found her obesity to be disabling, expressly noted the guidelines set forth in SSR 02-1p, and concluded that Plaintiff's obesity does not meet or medically equal any listing, reasoning as follows:

10

> The claimant's obesity, while not stated by any physician to be disabling, was considered in terms of its possible effects on claimant's ability to work and ability to perform activities of daily living. Although obesity is no longer a listed impairment, SSR 02-1p provides important guidance on evaluating obesity in adult and child disability claims. The undersigned is required to consider obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and determining the claimant's residual functional capacity. Obesity is considered severe when, alone or in combination with another medically determinable physical or mental impairment, it significantly limits an individual's physical or mental ability to do basic work activities (SSR 02-1p). The undersigned has earlier found claimant's obesity to be severe, but the signs, symptoms and laboratory findings of their [sic] obesity are not of such severity as found in any listing. The claimant's limitations due to obesity are reflected in the below residual functional capacity.

R. 23–24. At step four, the ALJ again specifically considered Plaintiff's obesity. R. 24, 26. The ALJ also considered years of medical records, including, *inter alia*, records detailing Plaintiff's musculoskeletal impairments and ability to ambulate, and observations that her asthma was stable with medication, and that she had been treated primarily with medications. R. 24–29. As set forth in more detail below, the ALJ then crafted an RFC for a limited range of sedentary work. R. 24. Accordingly, the ALJ properly considered Plaintiff's obesity at step three and at subsequent steps when she recognized Plaintiff's obesity as a severe impairment, recognized that she must consider the effect of Plaintiff's obesity on her other impairments, found that none of Plaintiff's impairments, whether considered singly or in combination, met or equaled a listed impairment, and specifically and in detail considered Plaintiff's musculoskeletal impairments—and the limitations imposed by all of Plaintiff's impairments—in determining Plaintiff's RFC. The ALJ expressly found, after engaging in that analysis, that Plaintiff's impairments did not preclude the performance of substantial gainful employment from January 12, 2013, through the date of the decision. R. 24–31; *see also Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; *Jones*, 364 F.3d at 505 (stating that if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not

11

meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination"); *Herron v. Comm'r of Soc. Sec.*, 386 F. App'x 68, 71 (3d Cir. 2010) (finding substantial evidence supported the ALJ's conclusion that the claimant did not suffer from a listed impairment where, *inter alia*, "[a]lthough [the claimant] is obese, there is substantial evidence that she could perform all activities of daily living and could drive and care for her children during this time"); SSR 02-1p.

To the extent that Plaintiff posits—without citation to record evidence or specifically identifying any additional limitations caused by her obesity—that her obesity is disabling, this Court is not persuaded. *See Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) ("In any event, remand to reconsider her combined impairments is not required because Carter has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her obesity or headaches affected her ability to perform basic work activities" and that the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original); *Woodson*, 661 F. App'x at 765 ("Woodson simply speculates about how his obesity might exacerbate other impairments—his back disorder, complaints of pain, arthritic knees, congestive heart failure, asthma attacks, or sleep apnea . . . . But Woodson never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests otherwise."); *Tietjen v. Berryhill*, No. CV 17-8030, 2019 WL 1238830, at *4 (D.N.J. Mar. 18, 2019) (rejecting argument that the ALJ failed to properly consider the claimant's obesity where the claimant "failed to specify how her obesity met the disability criteria contained in the SSR

and how her obesity precluded her from performing sedentary work with postural and

environmental limitations, as the ALJ concluded she could" and where the claimant "failed to list

obesity as an illness, injury, or condition constituting a disability in her application for SSI and

SSDI benefits"); *Vargas v. Colvin*, No. CV 15-2502, 2017 WL 123436, at *5 (D.N.J. Jan. 11,

2017) (affirming denial of benefits where, *inter alia*, "[a]lthough [the ALJ's] analysis is rather

brief, it is appropriate given the absence of any medical evidence in the record indicating that

Mr. Vargas's obesity has affected his functioning in any way. Further, Vargas points to none.");

*Jones v. Colvin*, No. CV 14-6778, 2016 WL 7338528, at *6 (D.N.J. Dec. 19, 2016) ("Here, ALJ

O'Leary considered Plaintiff's obesity both individually and in combination with his other

impairments. Plaintiff points to no evidence in the record to illustrate that the ALJ failed to

appropriately consider obesity."). The Court therefore concludes that the ALJ's discussion of

Plaintiff's obesity is sufficient and permits meaningful judicial review. *See Diaz*, 577 F.3d at

504; *Woodson*, 661 F. App'x at 765–66; SSR 02-1p. Plaintiff's assertion of error in this regard is

therefore without merit.

###### B.      Subjective Complaints

Plaintiff also challenges the ALJ's consideration of Plaintiff's subjective complaints,

apparently arguing that the ALJ improperly minimized Plaintiff's impairments. *Plaintiff's*

*Memorandum of Law*, ECF No. 22, pp. 14–19; *Plaintiff's Reply*, ECF No. 24, pp. 1–4. This

Court disagrees.

"Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3),  416.929(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R.

14

§ 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness.").[3]

Here, the ALJ properly followed this two-step evaluation process.  After considering the

record evidence, including Plaintiff's hearing testimony, the ALJ concluded that Plaintiff's

medically determinable impairments could reasonably he expected to cause the symptoms

alleged by her, but that Plaintiff's "statements concerning the intensity, persistence and limiting

effects of these symptoms are not entirely consistent with the medical evidence and other

evidence in the record for the reasons explained in this decision." R. 25. The ALJ went on detail

the reasons supporting this finding as follows:

> The undersigned does not find the claimant's statements to be wholly consistent
> with the medical evidence of the record because it is not fully supported by the
> longitudinal history in the record. The claimant's impairments began well prior to
> the alleged onset date. It is unclear from the notes that the claimants' impairments
> had worsened on that day so as to cause the claimant to not be able to work at all.
> As noted above, the MRIs from 2012 and 2014 were very similar. In addition, even
> after the alleged onset date, the record shows that the claimant was still looking for
> work. A treatment note from October 10, 2013, indicates that the claimant did not
> get the job at the hospital as a clerk (exhibit 4F, p. 5). This suggests that the
> claimant's impairments are not so severe as to cause her to be unable to work.
> Additionally, in her title XVI application, the claimant alleged that her disability
> began on April 1, 2012 (exhibit 2D, p. 1). However, in her adult disability report,
> the claimant stated that she stopped working on January 12, 2013, because of her
> conditions (exhibit 2E, p. 2). This further calls into question the accuracy of her
> alleged onset date. For this reason, the undersigned does not find that the claimant's
> statements are wholly consistent with the medical evidence of the record.
>
> Further, the treatment regimen prescribed by the treating physicians does not
> suggest that the claimant's conditions are especially limiting. Although the
> claimant has received treatment for the allegedly disabling impairments, that

[3]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.
Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

treatment has been essentially routine and conservative in nature. The record shows that the claimant was primarily treated through medication. A couple of notes show that the claimant was recommended to undergo or was undergoing physical therapy, but those notes are not in the record. There is no evidence of a TENS unit, or cortisone shots or of any injections to relieve her pain. There also does not appear to be any prescriptions for a walker or a cane, or any ambulatory devices to help her walk. While one note indicates that the claimant was referred for back surgery, the record does not contain any evidence of this surgical consult. Because the treatment notes do not fully comport with her allegations of disability, the undersigned does not find the claimant's statements to be fully consistent with the medical evidence of the record.

The undersigned also does not find the claimant's statements to be fully consistent with the claimant's activities of daily living. In her testimony, the claimant stated that she could do the laundry, and can load and unload a dishwasher. She also stated that she could go to the grocery store, although she still uses a motorized cart (testimony). This suggest[s] more ability to lift and carry than what she had opined. In her adult function report as well, the claimant also stated that she reads, which shows a good amount of ability to focus despite the pain (exhibit 7E, p. 5). Because the claimant's activities of daily living do not fully support her allegations of disability, the undersigned does not find the claimant's statements to be wholly consistent with the medical evidence of the record.

R. 28–29.

Plaintiff challenges this evaluation of her subjective complaints on a number of bases. Plaintiff first argues that the state agency physicians found that the medical evidence substantiated her subjective claims. *Plaintiff's Memorandum of Law*, ECF No. 22, p. 14; *Plaintiff's Reply*, ECF No. 24, pp. 2, 4. Although it is true that the reviewing state agency physicians commented that the medical evidence substantiated Plaintiff's subjective statements, R. 77, 87, these reviewing physicians also found that Plaintiff was nevertheless able to perform light work. R. 76–80, 86–90. Stated differently, even crediting Plaintiff's subjective statements, the record upon which Plaintiff relies does not support a finding that she is disabled. *See id.*

Plaintiff also asserts that "both examining and non-examining physicians, as well as her treating doctors, found plaintiff's complaints substantiated by the medical evidence alone (T. 77,

87, 256-402, 403-402 [sic],[4] 414-417 and 427-428[5]).” *Plaintiff's Memorandum of Law*, ECF No.

22, p. 14. This argument is likewise unavailing. As a preliminary matter, Plaintiff cites generally

to approximately 150 pages of the administrative record—R. 256–402, 414–17—that

purportedly support her assertion that her treating physician, Boris Furman, D.O., found her

subjective statements to be supported by the medical evidence. However, Plaintiff does not

specify which of those pages reflect Dr. Furman's finding in that regard. The Court will not hunt

through the record to find evidence to support Plaintiff's position. *See Atkins v. Comm'r Soc.*

*Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) (“‘[J]udges are not like pigs,

hunting for truffles buried in the record.’”) (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442

F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d

280, 307 (3d Cir. 2014) (“[T]his Court has frequently instructed parties that they bear the

responsibility to comb the record and point the Court to the facts that support their arguments.”).

In any event, even assuming that Dr. Furman believed that medical evidence supported

Plaintiff's subjective complaints, the ALJ appropriately assigned only “some weight” to Dr.

Furman's opinions, for the reasons that the Court will discuss in more detail below.

In addition, although Plaintiff asserts that a consultative examiner, Francky Merlin, M.D.,

found that medical evidence substantiated Plaintiff's subjective complaints, *Plaintiff's*

---

[4] The Court presumes that Plaintiff intended to cite to R. 403–05, which is the report of
consultative examiner Francky Merlin, M.D.

[5] The Court notes that R. 427–28 is a radiology report from Ocean Medical Center. After
reviewing this record, it is unclear why Plaintiff cited this evidence in support of her argument
regarding physicians' opinions that her subjective complaints were supported by the medical
record. The Court will not construct Plaintiff's arguments for her. *See Padgett v. Comm'r of Soc.*
*Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) (“[B]ecause Plaintiff has
articulated no analysis of the evidence, the Court does not understand what argument Plaintiff
has made here. Plaintiff has done no more than thrown down a few pieces of an unknown jigsaw
puzzle and left it to the Court to put them together. The Court does not assemble arguments for a
party from fragments.”).

*Memorandum of Law*, ECF No. 22, p. 14, it is not clear where in Dr. Merlin's consultative report he makes such a finding. *See* R. 403−405.[6] However, even if this report can be construed to so find, the ALJ went on to find that Plaintiff "had more restrictions than what Dr. Merlin opined." R. 28. Based on this record, the Court cannot conclude that remand is required on this basis.

Plaintiff next contends that the ALJ "wrongly found that plaintiff's [sic] was only treated through medications and that there was no evidence of injections to treat her pain (T. 29)." *Plaintiff's Memorandum of Law*, ECF No. 22, p. 14; *see also Plaintiff's Reply*, ECF No. 24, p. 2 (same). As a preliminary matter, the ALJ did not find that Plaintiff was treated "only" through medication; rather, the ALJ specifically noted that Plaintiff was "*primarily* treated through medication." R. 29 (emphasis added); *see also* R. 27 (noting that Dr. Furman treated Plaintiff "primarily through medication"). The ALJ went on to note a recommendation that Plaintiff "go on a low sodium diet[,]" R. 26, and that her asthma had been treated with steroids and nebulizer treatment, *id*., and observed that "[a] couple of notes show that the claimant was recommended to undergo or was undergoing physical therapy, but those notes are not in the record[,]" R. 29; *see also* R. 25 (noting Plaintiff's testimony that "she was taking medication and undergoing physical therapy").

Plaintiff also argues that the ALJ stated—incorrectly— that there was no evidence of shots or injections to ease Plaintiff's pain. *See* R. 27, 29. However, Plaintiff supports this argument by relying on records that predate by more than three (3) years her alleged disability onset date. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 14−15 (citing R. 247−55 (reflecting office treatment records from Seaview Orthopaedic and Medical Associates, dated

---

[6] In his report, Dr. Francky recounts Plaintiff's statements regarding her subjective complaints, R. 403, but specifically finds, *inter alia*, that Plaintiff "is able to sit, stand, walk, crouch, hear, and speak." R. 405.

September 23, 2009, through October 28, 2009)). While the ALJ could have considered this evidence, *see Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 120 (3d Cir. 2020) (citing *Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007); 20 C.F.R. § 416.912), this evidence was not entitled to controlling or, indeed, any particular weight. *Cf. Louis v*, 808 F. App'x at 120 (finding that the ALJ "was entitled to discount" an opinion letter where the opinion was written before the applicate date and alleged onset date and where it was inconsistent with the medical record); *Dennis-Orshak v. Berryhill*, No. 3:18-CV-15987, 2020 WL 4364330, at *4 (D.N.J. July 30, 2020) (finding that the ALJ did not err in giving no weight to report that predated the alleged onset date) (citation omitted). In any event, when she assessed Plaintiff's subjective complaints, the ALJ specifically and appropriately considered that Plaintiff's "treatment has been essentially routine and conservative in nature." R. 28−29; *see also Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's conservative treatment history as a factor that supported the ALJ's determination to discount the claimant's subjective complaints); *cf. Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245–46 (3d Cir. 2020) (characterizing injections as "relatively routine and conservative treatment"); *Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including trigger point injections, and physical therapy"). Accordingly, even assuming for the sake of argument that the ALJ erred in not expressly considering this evidence—*i.e.*, injections administered three (3) years prior to Plaintiff's alleged disability onset date and which allegedly resulted in little relief—any such error does not undermine the ALJ's evaluation of Plaintiff's subjective statements, nor does it otherwise require remand. *See id.*; *see also Shinseki*, 556 U.S. at 409−10; 20 C.F.R. § 404.1529(c)(3)(v); *Rutherford*, 399 F.3d at 553.

Plaintiff also complains that the ALJ erred in finding that Plaintiff had not undergone a surgical consult or surgery, explaining that she did not undergo surgery because she had lost her insurance. *Plaintiff's Memorandum of Law*, ECF No. 22, p. 15; *Plaintiff's Reply*, ECF No. 24, p. 2 (citing R. 26). In her decision, the ALJ observed that Plaintiff's treating physician, Boris Furman, D.O., reported in February 2016 that Plaintiff's treatment regimen consisted of "pain management, planning surgery and physical therapy," *see* R. 462, but that there was no evidence that Plaintiff "had undergone a surgical consult, or surgery since that date." R. 26. Plaintiff does not really address this finding. Instead, Plaintiff refers to 2009 medical records—records that date from long before Plaintiff's alleged disability onset date—that characterized Plaintiff as a candidate for surgery. *Plaintiff's Memorandum of Law*, ECF No. 22, p. 15 (citing R. 247–55); *Plaintiff's Reply*, ECF No. 24, p. 2 (same). *See also* R. 40–41 (reflecting Plaintiff's counsel's statements at the administrative hearing on October 18, 2016, that Plaintiff "was supposed to have surgery several years ago" but that "just before the surgery could take place, she lost her insurance and the surgery never occurred"), R. 49 (reflecting Plaintiff's hearing testimony that she agreed with her counsel's statement that she was supposed to have surgery but lost her insurance). In any event, the ALJ based her decision, not on this isolated finding, but on the entirety of the evidence of record, including the extensive medical treatment that Plaintiff received during the relevant time period. Under these circumstances, this Court concludes that Plaintiff's complaint in this regard is without merit.

Plaintiff also complains that the ALJ improperly considered Plaintiff's daily activities. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 15–16; *Plaintiff's Reply*, ECF No. 24, p. 2. *See* R. 29. However, it was not improper for the ALJ to take these activities into account when assessing Plaintiff's subjective complaints and testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)

(providing that the ALJ may consider a claimant's daily activities), 416.929(c)(3)(i) (same); *see also Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility."); *Loneker v. Comm'r of Soc. Sec.*, No. CV 17-2006, 2018 WL 5784996, at *4 (D.N.J. Nov. 5, 2018) ("The ALJ's decision is consistent with the Third Circuit's recognition that "[a]lthough 'any statements of the individual concerning his or her symptoms must be carefully considered,' the ALJ is not required to credit them," particularly where such statements are undermined by evidence of a more active lifestyle.") (quoting *Chandler v. Comm'r*, 667 F.3d 356, 363 (3d Cir. 2011)).

Plaintiff further complains that the ALJ discredited Plaintiff's testimony because Plaintiff "had difficulty in stating her onset date…. This is patently unfair since the hearing was held October 18, 2016 and being confused of a date some three or four years prior is not uncommon." *Plaintiff's Memorandum of Law*, ECF No. 22, p. 16; *Plaintiff's Reply*, ECF No. 24, p. 2. However, the ALJ appropriately considered that Plaintiff listed two, entirely inconsistent, disability onset dates in her applications for benefits. *Cf. Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 146 (3d Cir. 2007) ("Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible.") (citation omitted); *Ramos v. Colvin*, No. CV 14-3971, 2016 WL 1270759, at *7 (D.N.J. Mar. 31, 2016) (same). In any event, this was just one of many factors that the ALJ considered when assessing Plaintiff's subjective complaints and testimony.

Finally, Plaintiff complains that the ALJ, in assessing Plaintiff's subjective complaints and testimony, also took into account the fact that Plaintiff was still looking for work. "This is unconscionable. To deny benefits because an individual has a work ethic which causes her to

continue to look for work, should not be used against plaintiff." *Plaintiff's Memorandum of Law*, ECF No. 22, p. 16; *see also Plaintiff's Reply*, ECF No. 24, p. 3 ("The mere fact that Plaintiff was looking for a job, is not evidence of the ability to work."). To the contrary, it was entirely permissible to the ALJ to consider this evidence. *See Williams v. Comm'r of Soc. Sec.*, 574 F. App'x 93, 94–95 (3d Cir. 2014) (finding that "[t]he ALJ was on solid ground when he ruled that he could not rely on [the claimant's] reports about the level of her pain and limitations" where the ALJ "pointed to other parts of the record that would cause anyone to doubt her credibility[,]" including that Plaintiff was looking for work); *Lee v. Berryhill*, No. CV 18-10181, 2019 WL 2743967, at *4–5 (D.N.J. June 30, 2019) ("In addition, she collected unemployment benefits and looked for work, which also shows that she had the capacity to work."); *Makowski v. Comm'r of Soc. Sec.*, No. CV 16-1656, 2017 WL 3151243, at *7 (D.N.J. July 24, 2017) ("Finally, the ALJ noted that Plaintiff had collected unemployment benefits, continued to look for work, and gone on job interviews, presenting herself as willing and able to work, undermining her assertion that she is disabled. (R. at 36.) Based on this record, there is substantial evidence that Plaintiff's allegations of further limitation were not credible.").

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where

"the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

**C.    RFC**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 19–23; *Plaintiff's Reply*, ECF No. 24, pp. 3–5. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. §§ 404.1545.(a)(1), 416.945(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows: the claimant can sit up to six hours out of an eight-hour workday, but no more than 1 hour at a time; and then she would need to stand and shift positions for up to 5 minutes every hour, while remaining on task. The claimant can occasionally climb ramps and stairs. She can occasionally stoop. She can perform no more than occasional overhead lifting and reaching with the right dominant upper extremity. She would occasionally need to ambulate with a cane. The claimant must avoid concentrated exposure to dust, fumes, pulmonary irritants, humidity and temperature extremes. Due to a combination of symptoms, the claimant would be limited to low stress work, defined as simple/routine tasks, having no fast production rate pace, and no strict production quotas. She may be off task during the workday due to symptoms, but no more than 5%, in addition to breaks.

R. 24. In making this determination, the ALJ detailed years of record evidence and testimony, including, *inter alia*, that Plaintiff's MRIs in 2012 and 2014 were very similar and had not significantly changed, that Plaintiff was able to ambulate, that she had continued to look for work, that she had received routine and conservative treatment despite complaints of pain, and that she had engaged in daily life activities such as doing laundry, loading and unloading the dishwasher, going to the grocery store and using the motorized cart, and reading. R. 24–29. The record unquestionably contains substantial evidence to support this RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

In challenging this determination, Plaintiff contends that the ALJ improperly discounted the opinions of her treating physician, Dr. Furman, and failed to incorporate Dr. Furman's more restrictive limitations in the RFC. *Plaintiff's Memorandum of Law*, ECF No. 22, p. 20; *Plaintiff's Reply*, ECF No. 24, pp. 4–5.

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*,

24

225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6); *see also* SSR 96-2p.[7] Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d

---

[7] The Social Security Administration amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (providing that the rules in this section apply only to claims filed before March 27, 2017), and SSR 96-2p was rescinded. As previously noted, Plaintiff filed her claims for benefits in January and October 2014.

Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Finally, "'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]'" *Chandler*, 667 F. 3d at 361 (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011)).

Here, the ALJ explicitly considered Dr. Furman's opinions and assigned "some weight" to those opinions, reasoning as follows:

> The record contains various opinions from Dr. Furman regarding the claimant's exertional and non-exertional limitations. In his treatment notes, he opined that the claimant should not lift any more than 5 pounds and stand more than 15-20 minutes at the time due to her conditions. In opinions, he stated that the claimant was unable to sit or stand for a long period of time, and has to change positions, or cannot push, pull or lift more than three pounds. He also noted that the claimant had severe back pain causing an inability to move (Exhibits 4F, p. 26; 11F, p. 34, 74). In an examination report, Dr. Furman also opined that the claimant could not work primarily due to pain, but that the claimant was ambulatory. He noted that the claimant had restrictions, standing, walking, climbing, stooping, bending and lifting, although he did not specify to what extent the claimant had these restrictions (Exhibit 11F, p. 92).
>
> Dr. Furman also contained [sic] a lumbar spine medical source statement on October 16, 2015. In this report, he noted that the claimant had severe back pain, a limited range of motion and severe weakness in the legs, and a reduction in the

length of mobility due to severe pain (Exhibit 7F, p. 1). He noted that the claimant had an abnormal gait, sensory loss, muscle spasms and impaired sleep. He opined that the claimant could sit, stand and walk for less than 2 hours each in an eight-hour day, and that the claimant needs a job that permits shifting of position at will from sitting, standing or walking, and that the claimant would need to take 7 unscheduled work breaks during the day. He also found that the claimant must need to use a cane or other assistive device (Exhibit 7F, p. 2-3). He also opined that the claimant could lift and carry less than 10 pounds rarely, but never any more than that, could never twist, stoop, crouch, squat, climb ladders, and rarely climb stairs. He also opined that the claimant could use her hands and arms 1-5% of the time, and her fingers and arms 34-66% of the time, both bilaterally (Exhibit 7F, p. 3). While he opined that the claimant would be off-task 25% of the time or more due to the symptoms interfering with attention or concentration, he opined that the claimant was capable of tolerating high-stress work. Finally, he opined that the claimant would miss more than 4 days of work per month due to her impairments (Exhibit 7F, p. 4).

The undersigned gives Dr. Furman's opinions some weight. Dr. Furman is a treating source who examined the claimant multiple times prior to issuing his opinions. However, the treatment notes and the record do not support his opinions. First, it is not supported by the objective medical examinations above. The MRIs do not support the limitations that Dr. Furman had opined. In addition, Dr. Furman's treatment notes do not fully support his treatment notes. The treatment notes above show that the claimant complained of pain, and had a positive straight leg-raising test, but otherwise his treatment notes were not very clear. There is no evidence of an antalgic gait, or that the claimant needed a walker or cane to ambulate. He had also called the claimant "ambulatory." Further, the treatment regimen does not support Dr. Furman's extreme limitations. Dr. Furman treated the claimant primarily through medication. There is no indication of a prescription for a cane, a TENS unit, or any other injections. His opinions are further undermined by the claimant's own testimony, who stated in her testimony that she was able to do laundry, which shows more ability to lift than what he had opined. However, the undersigned concurs that his notes are sufficient to show that the claimant has exertional limitations with additional non-exertional limitations. For these reasons, the undersigned gives Dr. Furman's opinions some weight.

R. 26−27. The Court finds no error in the ALJ's evaluation in this regard.

Plaintiff, however, challenges the ALJ's conclusion that Dr. Furman's opinions were inconsistent with the longitudinal record because "Dr. Furman is the 'longitudinal record[,]'" having treated Plaintiff since December 2008 and as recently as September 2016. *Plaintiff's Reply*, ECF No. 24, p. 5. Plaintiff also insists that objective evidence supports Dr. Furman's

opinions. *Id*. (citing R. 290−94, 427−46, 516−56). To the extent that Plaintiff simply recites Dr. Furman's opinions and insists that the ALJ should have considered them, *see Plaintiff's Memorandum of Law*, ECF No. 16, pp. 20, 22−23, the record is clear that ALJ specifically considered Dr. Furman's treating relationship with Plaintiff, noting that he had treated her on multiple occasions over the years. *See* R. 27. It is important to remember that Dr. Furman's opinion does not bind the ALJ merely because he is a treating physician. *See Chandler*, 667 F. 3d at 361. In addition, as detailed above, the ALJ specifically considered the medical evidence of record, noting *inter alia* that the "MRIs do not support the limitations that Dr. Furman had opined," R. 27, and that the 2012 and 2014 MRIs of the lumbar spine had not significantly changed, R. 25. The ALJ also observed that Dr. Furman's treatment notes did not fully support his opinions, noting that the doctor's notes characterized Plaintiff as "ambulatory," without evidence of an antalgic gait or a prescription for a walker or cane. R. 27. As the ALJ also noted, Dr. Furman's treatment was generally conservative, which served to discount his extreme limitations, as did Plaintiff's daily activities. *Id*. Substantial evidence therefore supports the ALJ's decision to assign "some weight" to Dr. Furman's opinions. *See* 20 C.F.R. §§ 404.1527(c)(3), (4), (6), 416.927(3), (4), (6); *Brunson*, 704 F. App'x at 59–60; *Chandler*, 667 F. 3d at 361. Although Plaintiff refers to medical evidence that she believes warrants according greater weight to Dr. Furman's opinions, *Plaintiff's Reply*, ECF No. 24, p. 5, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec*., 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations

[under the substantial evidence standard].");  *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F.

App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of

conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'")

(quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Because an ALJ need include in the

RFC only "credibly established" limitations, *i.e.*, limitations "that are medically supported and

otherwise uncontroverted in the record[,]" *Rutherford*, 399 F.3d at 554, this Court concludes that

the ALJ did not err in excluding from the RFC the greater functional limitations articulated by

Dr. Furman.

Plaintiff next complains that the ALJ failed to consider the side effects of Plaintiff's pain

medication, including flexeril, oxycodone, roxicodone, tramadol, soma and morphine. "The

record reveals side effects of these medications and they are known to cause drowsiness. These

factors were not considered when assessing the RFC nor were they provided to the vocational

expert when determining what occupation plaintiff could perform." *Plaintiff's Memorandum of

Law*, ECF No. 22, pp. 20–21; *Plaintiff's Reply*, ECF No. 24, p. 5 (same). However, Plaintiff

points to no evidence in the record establishing additional limitations caused by her medications.

*See id.*; *see also Grandillo v. Barnhart*, 105 F. App'x 415, 419 (3d Cir. 2004) (holding that

where a claimant has "not cited to any medical evidence demonstrating that she suffered adverse

side effects from her medication . . . her own conclusory statements [do] not establish a sufficient

ongoing struggle with any side-effects to undermine the ALJ's determination"). It is true that

Plaintiff testified at the administrative hearing that she experienced drowsiness. *See* R. 45, 51.

However, the "[d]rowsiness [that] often accompanies the taking of medication, … should not be

viewed as disabling unless the record references serious functional limitations." *Burns v.

Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002). Plaintiff has not identified any such evidence of

serious functional limitations cause by Plaintiff's claimed drowsiness. Accordingly, the ALJ's

failure to consider Plaintiff's alleged drowsiness or to incorporate any—otherwise unidentified—

related functional limitations does not undermine the ALJ's RFC determination. *See Morris v.*

*Comm'r of Soc. Sec.*, No. CV 18-17531, 2020 WL 529204, at *5 (D.N.J. Jan. 31, 2020)

("Plaintiff does not cite any evidence documenting medication side effects or functional

limitations that are not accounted for in her RFC."); *Pucciarello v. Colvin*, No. CV 15-3719,

2016 WL 3912851, at *16–17 (D.N.J. July 19, 2016) ("Plaintiff here has failed to present

'evidence of any functional limitation' related to his alleged drowsiness and clouded mental

focus and, therefore, the ALJ's implicit decision to discount these claimed side-effects is

supported by substantial evidence.") (citations omitted).

     Plaintiff also complains that the ALJ failed to perform a "function-by-function"

assessment as required by SSR 96-8p. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 22–23.

An ALJ's RFC assessment "must first identify the individual's functional limitations or

restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-

8p. However, an ALJ is not required "to use particular language or adhere to a particular format

in conducting [the] analysis[;]" instead, the ALJ's decision must contain "sufficient development

of the record and explanation of findings to permit meaningful review." *Jones v*, 364 F.3d at

505; *see also Diciano v. Comm'r of Soc. Sec.*, No. 1:18-CV-17383, 2019 WL 6696523, at *5

(D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the

relevant evidence of an individual's ability to do work-related activities, but an ALJ does not

need to use particular language or adhere to a particular format in conducting his RFC analysis.")

(citations omitted). Here, the ALJ detailed the record evidence in a narrative discussion

throughout several single-spaced pages, considered Plaintiff's exertional and non-exertional

functional limitations, and crafted an RFC that reflected those limitations. R. 23−29. For the reasons previously discussed, this Court concludes that substantial evidence supports the ALJ's RFC determination. Moreover, and based on this record, this Court also concludes that the ALJ complied with the requirements of SSR 96-8p. *See Jones v*, 364 F.3d at 505; *Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("[T]he United States Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.") (collecting cases); *cf. Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) (affirming the ALJ's RFC determination, despite the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do").

Finally, Plaintiff asserts in conclusory fashion that the ALJ "erred in not including . . . her need for a cane[.]" *Plaintiff's Memorandum of Law*, ECF No. 22, p. 23. However, the ALJ specifically considered this issue and found that, although Dr. Furman had opined that Plaintiff needed a cane, he had never actually prescribed a walker or cane. R. 27, 29. Nevertheless, the ALJ actually found that Plaintiff "would occasionally need to ambulate with a cane." R. 24. Accordingly, the ALJ specifically considered Plaintiff's alleged need for a cane, which is reflected in the RFC found by the ALJ. Plaintiff's complaint in this regard is without merit.

In short, the Court concludes that the ALJ's RFC determination is consistent with the record evidence and enjoys substantial support in the record.

### D.      Step Five

Plaintiff also challenges the ALJ's determination at step five, arguing that the vocational

expert's testimony is inconsistent with the Dictionary of Occupational Titles ("DOT") and that

the vocational expert's testimony is not based on sufficient facts or a reliable method of

determination. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 23−24. Plaintiff's arguments

are not well taken.

Here, the vocational expert expressly testified that his testimony was consistent with the

DOT. R. 68. Plaintiff nevertheless complains that the ALJ erred when she relied on that

testimony because the testimony "is not based on sufficient facts or data, a reliable principle or

method[.]" *Plaintiff's Memorandum of Law*, ECF No. 22, p. 23. Plaintiff argues that the

"vocational expert's testimony must be verifiable by a reliable principle or method and not

merely an individual's observations." *Id*. at 23−24 (citing Fed. R. Evid. 702;[8] *Daubert v. Merrell*

*Down Pharm., Inc.*, 509 U.S. 579 (1993); *Donohue v. Barnhart*, 279 F.3d 441, 446 (7th Cir.

2002)). However, the Third Circuit has specifically rejected any requirement that an ALJ

conduct a reliability inquiry of the vocational expert similar to that of Rule 702:

> In support of his argument, Welsh directs us to *Donahue v. Barnhart*, a case in
> which the Seventh Circuit held that if the basis for a vocational expert's conclusions
> is questioned, "the ALJ should make an inquiry (similar though not necessarily
> identical to that of [Federal Rule of Evidence] 702) to find out whether the

---

[8] Rule 702 of the Federal Rules of Evidence provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training,
or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the
trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the
case.

purported expert's conclusions are reliable."[] 279 F.3d 441, 446 (7th Cir. 2002). The Seventh Circuit's requirement, however, "has not been a popular export." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 449 (2d Cir. 2012) (citing several unpublished district court decisions disagreeing with *Donahue*). We have not adopted it, nor has any court outside the Seventh Circuit. *See id*. And with good reason, as the governing statute provides by its terms that "[e]vidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure." 42 U.S.C. § 405(b)(1); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A [vocational expert's] recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required."). Accordingly, we reject Welsh's argument and conclude the ALJ did not err in accepting, without further probing, the vocational expert's testimony.

*Welsh v. Comm'r Soc. Sec.*, 662 F. App'x 105, 109–10 (3d Cir. 2016). Accordingly, this Court concludes that the ALJ did not err in relying on the vocational expert's testimony. *See id.*; *see also Trzeciak v. Colvin*, No. CV 15-6333, 2016 WL 4769731, at *12 (D.N.J. Sept. 12, 2016) (finding that "it was proper for the ALJ to rely upon the VE's experience"). Plaintiff's request to reverse the ALJ's decision on this basis is therefore not well taken. *See id*. In short, substantial evidence supports the ALJ's determination at step five.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  December 30, 2020                    *s/Norah McCann King*
                                   NORAH McCANN KING
                                   UNITED STATES MAGISTRATE JUDGE